**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**MATTHEW DANA LINGER,**

Plaintiff,

v.

**KILOLO KIJAKAZI,**
**Commissioner of Social Security,**

Defendant.

CIVIL ACTION NO.: 1:21-CV-102
(KLEEH)

## <u>REPORT AND RECOMMENDATION</u>

### I.   <u>INTRODUCTION</u>

This case arises from the denial of Plaintiff Matthew Dana Linger's Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, Administrative Law Judge ("ALJ") William R. Stanley concluded that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Counsel for the Social Security Administration ("SSA") denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security, Kilolo Kijakazi. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion [ECF No. 19] for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 22] be **GRANTED**.

A.      **Procedural History**

On March 4, 2019, Plaintiff filed a Title II application for a period of disability and DIB, alleging disability beginning on November 1, 2018. R. 59. The claim was denied initially on August 23, 2019, and upon reconsideration on May 7, 2020. R. 59. Plaintiff then requested a hearing before an ALJ, which was held on October 29, 2020. R. 59. Following the administrative hearing, the ALJ issued his decision on December 3, 2020, concluding Plaintiff was not disabled. R. 59-71. In the ALJ's decision denying Plaintiff's application for DIB, he found in step four that Plaintiff was unable to perform any past relevant work. R. 69. However, in step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 69-70. The Appeals Counsel denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-4.

On July 23, 2021, Plaintiff, through his counsel, Brian D. Bailey, Esq., filed a Complaint [ECF No. 1] in this Court to obtain judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The Commissioner, through counsel Maximillian Nogay, Assistant United States Attorney, filed an Answer [ECF No. 12] and the Administrative Record [ECF No. 13] on November 9, 2021. Plaintiff and the Commissioner then filed Motions for Summary Judgment [ECF Nos. 19, 22] along with supporting briefs [ECF Nos. 19-1, 23]. Plaintiff then filed a reply brief [ECF No. 28]. Oral argument was held on April 13, 2022.

The matter is now ripe before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties'

motions, corresponding briefs, and the administrative record, the undersigned now issues the following Report and Recommendation.

### B.    Personal History

Plaintiff was born on September 27, 1983 and was thirty-five years old at the time he applied for disability insurance benefits. R. 9. Plaintiff is 5'3" and weighs approximately 130 pounds. R. 938. Plaintiff is a high school graduate who lives with his mother and daughter. R. 938, 940. He has not engaged in substantial gainful activity since 2018, where he last worked for Precision Pipeline as a laborer. R. 941.

### C.    Medical History

In accordance with the Order Directing Filing of Briefs [ECF No. 14], the parties were required to produce a stipulation of facts to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Accordingly, the undersigned relies upon those stipulated facts throughout this Report and Recommendation and will not reproduce them herein. See ECF No. 19-1 at 6-7; ECF No. 23 at 1-6.

## II.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The SSA uses the following five-step

sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a

listed impairment, we will assess and make a finding about your residual functional

capacity ("RFC") based on all the relevant medical and other evidence in your case

record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the

claimant to prove that he or she is disabled and that, as a result of the disability, he or

she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d

802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the

Commissioner at step five to demonstrate that jobs exist in the national economy that

the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## III.   SCOPE OF REVIEW

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). However, the court does not "reflexively rubber-stamp an ALJ's findings." Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017).

## IV.   <u>CONTENTIONS OF THE PARTIES</u>

**A.     Whether the ALJ built a logical bridge from his findings on Plaintiff's mental limitations to the conclusions reached in the RFC.**

Plaintiff contends that the ALJ made findings pertaining to Plaintiff's mental impairments that conflict with the ALJ's RFC assessment. ECF No. 19-1 at 8-12; ECF No. 28 at 6-14. The ALJ failed to address these inconsistencies with Plaintiff's mental limitations or adequately explain the rationale for the deviation. <u>Id.</u> The Commissioner contends that substantial evidence supports the ALJ's RFC assessment that fully accommodates Plaintiff's mental limitations. ECF No. 23 at 6-13.

**B.     Whether the ALJ erred in his persuasiveness evaluation of the medical opinions pertaining to Plaintiff's mental limitations.**

Plaintiff argues that the ALJ erred in his persuasiveness evaluation of the medical opinions of Mr. McCullough and Dr. Goudy. ECF No. 19-1 at 12-19; ECF No. 28 at 14-19. In response, the Commissioner argues that the ALJ properly followed the regulatory framework for evaluating medical opinions. ECF No. 23 at 13.

**C.     Whether the Appeals Council erred in its assessment of additional evidence.**

Plaintiff argues that remand is required because the Appeals Council erred in its assessment of additional evidence that further clarified two previous medical opinions and critiqued the ALJ's decision. ECF No. 19-1 at 19-20; ECF No. 28 at 19-20. Plaintiff argues that the Appeals Council's finding was in error because both reports are new and "provide enlightenment to questionable and weak rationale provided by the ALJ in assessing persuasiveness." <u>Id.</u> Plaintiff also argues the Appeals Council's decision lacks any rationale as to how it considered the evidence. <u>Id.</u>

The Commissioner argues that remand is not required because such evidence is not likely to change the ALJ's decision, which the Appeals Council correctly found. ECF No. 23 at 13-14.

## V.    DISCUSSION

### A.    The ALJ built a logical bridge from his findings on Plaintiff's mental limitations to the conclusions reached in the RFC.

Plaintiff argues that the ALJ made findings pertaining to Plaintiff's mental impairments that conflict with the ALJ's RFC assessment and failed to address these inconsistencies or adequately explain the rationale for the deviation. ECF No. 19-1 at 8-12; ECF No. 28 at 6-14. The Commissioner contends that substantial evidence supports the ALJ's RFC assessment that fully accommodates Plaintiff's mental limitations. ECF No. 23 at 6-13.

At steps two and three, the ALJ makes medical findings as to the severity of Plaintiff's physical and mental impairments. 20 C.F.R. §§ 404.1520(a), 416.920(a). The mental limitations addressed in Plaintiff's brief fall under what is called the "Paragraph B" mental function analysis of the ALJ's decision. The mental limitations identified in the "paragraph B" criteria "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). If the mental impairments do not meet the requirements for a finding of disability at steps two or three, the mental impairments/limitations will be considered by the ALJ when determining the RFC. 20 C.F.R. § 404.1545.

The ALJ must build a logical bridge between the evidence and the conclusions reached. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). When expressing the

7

RFC finding, the ALJ need only provide enough discussion for the Court to meaningfully review it. Macio v. Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015).

The ALJ found that Plaintiff possessed the following mental limitations at step three: moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in his ability to concentrate, persist, or maintain pace; and moderate limitations in his ability to adapt or manage himself. R. 63.[1] Plaintiff, however, misconstrues the ALJ's findings and incorrectly asserts that the ALJ found the following mental limitations: "understanding what is said to him; following instructions; completing tasks; paying bills; concentrating generally; focusing generally; maintaining a regular work schedule; and managing his mood." ECF No. 19-1 at 9; ECF No. 28 at 7. Upon careful review of the ALJ's decision, the mental limitations Plaintiff claims the ALJ found were simply the Plaintiff's allegations and contentions that the ALJ weighed against other evidence in the record such as daily activities when assessing the severity of the limitations. To illustrate, here is an excerpt from the ALJ's decision.

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that he has limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule. On the other hand, the claimant said that he is also able to drive, watch TV, and handle his own medical care. Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention.
>
> R. 63.

---

[1] The ALJ further found that these limitations did not meet a listing at step three of the sequential evaluation process. R. 62-63.

In essence, Plaintiff has fashioned an argument that the ALJ has made certain findings that conflict with the RFC when, in reality, the ALJ never actually made those findings. The ALJ found in the excerpt above that Plaintiff has a moderate limitation in his ability to concentrate, persist, or maintain pace. The ALJ did not find that Plaintiff "has limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule." These were simply the Plaintiff's contentions that the ALJ took into consideration. Accordingly, Plaintiff's arguments in this section are moot as no actual conflict exists between the ALJ's mental limitation findings at step three and the RFC.

The RFC limited Plaintiff to the following:

> simple, routine, and repetitive 1 to 2 step tasks; requiring only simple decisions; with no fast-paced production requirements such as assembly line work or piecemeal quotas; is capable of adapting to changes in the work environment, meaning a change in work responsibilities or workplace, which are explained to the claimant ahead of time and implemented gradually over time; and occasional contact with coworkers, supervisors, and the general public.

R. 64.

The RFC is consistent with the ALJ's prior step three findings, and they are not in conflict as the Plaintiff suggests. The ALJ found that Plaintiff had moderate limitations in "understanding, remembering, or applying information," so the RFC limited Plaintiff to "simple, routine, and repetitive 1 to 2 step tasks; requiring only simple decisions." R. 63-64. The ALJ found that Plaintiff had mild limitations in "interacting with others," so the RFC limited Plaintiff to "occasional contact with coworkers, supervisors, and the general public." R. 63-64. The ALJ found that Plaintiff had moderate limitations in his ability to "concentrate, persist, or maintain pace," so the RFC limited Plaintiff to "no fast-paced

production requirements such as assembly line work or piecemeal quotas."[2] R. 63-64.

Finally, the ALJ found that Plaintiff had "moderate limitations in his ability to adapt or

manage himself," so the RFC limited Plaintiff to being able to adapt in the workplace so

long as the change is "explained to the claimant ahead of time and implemented

gradually over time." R. 63-64.

The ALJ stated in his decision: "[t]he following residual functional capacity

assessment reflects the degree of limitation the undersigned has found in the

"paragraph B" mental function analysis." R. 63. It is clear the ALJ considered these

mental limitations when fashioning the RFC, and his step three findings in no way

conflict with the RFC. Substantial evidence supports the ALJ's RFC assessment, which

fully accommodates Plaintiff's mental limitations, and the undersigned finds no error.

### B.    The ALJ did not err in his persuasiveness evaluation of the medical opinions.

Plaintiff contends that there were errors with the ALJ's persuasiveness

evaluations of the medical opinions of Mr. Rod McCullough and Dr. Tony Goudy. ECF

No. 19-1 at 12-19; ECF No. 28 at 14-19. The ALJ must articulate the persuasiveness of

each medical opinion, specifically with respect to whether the opinions are supported by

---

[2] Plaintiff argues it was error for the ALJ to limit the RFC to no fast-paced production without defining what "fast-paced production" means. ECF No. 19-1 at 11. Plaintiff cites Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) in support, where the Fourth Circuit held that the ALJ frustrated meaningful review because (among other reasons) the RFC did not explain what work "requiring a production rate or demand pace" meant. Yet, Plaintiff seems to miss the fact that the ALJ in this case defined "no fast-paced production requirements" as "no assembly line work or piecemeal quotas." R. 64. Thus, the instant case is distinguishable from Thomas because the undersigned is able to discern the meaning of "no fast-paced production requirements" and thus perform meaningful review. Furthermore, as the Commissioner notes, neither the vocational expert nor Plaintiff's attorney asked for clarification at the hearing as to the meaning of "fast-paced production requirements." So, it is fair to conclude the meaning was understood at the hearing. See Summerfield v. Saul, 2020 WL 2105850, at *8 (N.D.W.V. Apr. 16, 2020) (finding that when the ALJ used the term "fast-paced production requirements" in hypothetical to the vocational expert and neither the expert nor the claimant's attorney asked for clarification at the hearing, it was reasonable to conclude that they both understood the term "fast-paced production requirements" as it applied to the claimant's case).

and consistent with the record. 20 C.F.R. §§ 404.1520c, 416.920c. For supportability, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." Id. For consistency, "the more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . .  will be." Id. Plaintiff argues that the ALJ failed to adequately consider the supportability and consistency factors for the medical opinions of Mr. McCullough and Dr. Goudy when determining persuasiveness in relation to the record as a whole. ECF No. 19-1 at 12-19; ECF No. 28 at 14-19.

Mr. McCullough opined on the severity of Plaintiff's mental limitations. R. 68. The ALJ found that McCullough's opinions "overstate the extent of the severity of the claimant's borderline intellectual functioning symptomology," and reasoned that the "overall objective record does not support more than moderate limitations under the 'B criteria.'" R. 68. Dr. Goudy opined that given Plaintiff's cognitive issues, "it would clearly appear that [Plaintiff] could not pursue substantial gainful activity at this point, even with simple labor type jobs." R. 67. The ALJ found that the opinions of Mr. McCullough and Dr. Goudy were not persuasive as they were not fully consistent with the totality of the objective record. R. 67-68. While the ALJ noted that the record does support some psychiatric limitations secondary to a diagnosis of borderline intellectual functioning, the record also shows that Plaintiff had previously maintained employment as a laborer despite his mental issues, could still perform many daily activities without significant issues, and had mental status evaluations demonstrating normal attention,

concentration, and memory. R. 67-68. Plaintiff contends that these reasons provided by the ALJ simply were not good reasons for finding the opinions of Dr. Goudy and Mr. McCullough unsupported by and inconsistent with the record. ECF No. 19-1 at 18.

### 1. Daily Activities

First, Plaintiff argues that the ALJ's conclusory finding that Plaintiff could still perform many daily activities without significant issues frustrates meaningful review because the ALJ failed to specify what daily activities could be performed. ECF No. 19-1 at 15. Plaintiff further argues that the ALJ also failed to assess those daily activities considering the requirements of sustained work activity. Id. (citing Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 100 (4th Cir. 2020) ("SSR 96-8p explains that the [RFC] analysis is "an assessment of an individual's ability to do sustained work-related" activities "on a regular and continuing basis"—i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule."")).

The ALJ adequately described Plaintiff's daily activities when reviewing Plaintiff's testimony in the decision. See R. 63-66. The ALJ need not restate them again when evaluating the medical opinions, as Plaintiff contends. The undersigned is able to follow the ALJ's reasoning and reference the previously described daily activities. As such, meaningful judicial review is not frustrated.

Furthermore, it is evident that the ALJ kept in mind Plaintiff's ability to perform sustained work activity during his RFC analysis, including during his assessment of the medical opinions. Specifically, one of the ALJ's reasons for finding McCullough and Goudy's opinions unpersuasive was that Plaintiff previously maintained employment as a laborer in spite of his mental issues and history of borderline intellectual functioning. In

12

other words, historically, Plaintiff has been able to perform sustained work-related activity in a work setting and can still perform many daily activities at a sustained level without significant issues despite his mental limitations. The Fourth Circuit has explained "that RFC determinations may contain implicit findings." See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96-8p, ... [the ALJ's] conclusion [that the plaintiff could perform a range of sedentary work] implicitly contained a finding that [the plaintiff] physically is able to work an eight-hour day."). Here, the ALJ found that Plaintiff has the residual functional capacity to perform certain sedentary work that accommodates Plaintiff's mental limitations. R. 64. When the ALJ determined Plaintiff's RFC, this determination implicitly contained a finding that Plaintiff has the ability to work an eight-hour day.

### 2. Co-worker Affidavit

Second, Plaintiff argues that the ALJ's reasoning, that Plaintiff had previously maintained employment as a laborer despite his mental issues, failed to account for the affidavit of Darrell Keener, which notes that Plaintiff required significant work accommodations, had difficulty with even the simplest of tasks, and could not grasp the simplest of concepts. ECF No. 19-1 at 15-16 (citing R. 357-358).

20 C.F.R. § 404.1520c(d) states that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."[3] Here, the ALJ was not required to articulate how he considered the affidavit, a nonmedical source. See 20 C.F.R. § 404.1520c(d). Nonetheless, it is evident from the ALJ's synopsis of Dr. Goudy's opinion that the ALJ took the affidavit into consideration. Dr. Goudy noted the affidavit in his

---

[3] "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).

report, R. 865, and the ALJ summarized Dr. Goudy's findings from the affidavit in his decision. R. 67. In summarizing Dr. Goudy's opinion, the ALJ wrote: "an affidavit this year from a coworker clearly described [the claimant's] cognitive difficulties with even the most basic work tasks, and those difficulties ultimately led to his termination from his manual labor job at a pipeline company." R. 67. Thus, Plaintiff's contention that "the ALJ's decision is silent on Keener's" affidavit is baseless. ECF No. 19-1 at 15-16.

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson, 402 U.S. at 401. When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson, 434 F.3d at 653.

Here, the ALJ made the determination that Plaintiff's ability to maintain past work as a laborer for years, despite his mental limitations, evinced a continued ability to work, rendering Dr. Goudy's and Mr. McCullough's opinions unpersuasive. In his reply, Plaintiff argues that his ability to perform non-sedentary work in the past was not a relevant consideration. ECF No. 28 at 18. Ultimately, the Court cannot reweigh the medical opinions and the co-worker affidavit and will not substitute its judgment for that of the ALJ's. Regardless of whether the undersigned agrees with the ALJ's reasoning, Plaintiff's ability to perform medium and heavy work in the past despite his mental limitations is relevant evidence that a reasonable mind might accept to support the conclusion that Plaintiff is still able to work in some capacity at the sedentary level.[4]

---

[4] While medium and heavy level jobs may differ in work responsibilities and tasks from that of sedentary jobs, as the Plaintiff points out in his reply, the takeaway is that in those past jobs, Plaintiff was able to perform them, despite his mental limitations, for years. And, while it is possible that sedentary jobs in general might require more mentally from Plaintiff than his past jobs did, this concern is completely

### 3.  Mental Status Evaluations

Third, the ALJ also reasoned that the "[m]ental status evaluations throughout the record have also included normal attention, concentration, and memory. (Exhibit 13F/10)." R. 67-68. Yet, Plaintiff notes that the ALJ only cites to one medical evaluation, R. 773, of which the primary purpose did not appear to be Plaintiff's mental health. ECF No. 19-1 at 16. While certainly relevant, this evidence, in a vacuum, may not provide enough support on its own to find Mr. McCullough and Dr. Goudy's opinions unpersuasive. However, this evidence taken in conjunction with all the other evidence in the record, including Plaintiff's past work and daily activities, amounts to substantial evidence that reasonably supports the ALJ's conclusions.

### 4.  No Contrary Medical Opinion Evidence

Lastly, in his reply brief, Plaintiff raises some new arguments as to issues with the ALJ's persuasiveness evaluation of the medical opinions. Plaintiff notes that "the ALJ rejected all the medical opinion evidence concerning [Plaintiff's] mental limitations," which Plaintiff contends is error as the ALJ "impermissibly played doctor." ECF No. 28 at 15-17. Plaintiff similarly argues that the lack of contrary medical opinions further undermines the ALJ's reasoning that Mr. McCullough and Dr. Goudy's opinions were unpersuasive. ECF No. 28 at 15-18.[5]

---

alleviated when one considers that the ALJ's RFC fully accounted for Plaintiff's mental limitations and thus narrowed the type and number of sedentary jobs Plaintiff could actually perform with his current mental limitations. R. 64, 69-70.

[5] Plaintiff has waived any new arguments presented in the reply brief that were not included in his opening brief. It is well established that "arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived." Moseley v. Branker, 550 F.3d 312, 325 n. 7 (4th Cir. 2008) (citing Cavallo v. Star Enter., 100 F.3d 1150, 1152 n. 2 (4th Cir. 1996)). Because Plaintiff raises new arguments for the first time in his reply, they are deemed waived and need not be addressed. But even if Plaintiff did not waive these arguments, the undersigned nevertheless concludes that they are without merit.

"Although it is true that an ALJ need not adopt any specific medical opinion in full, an ALJ's rejection of medical opinions can leave an 'evidentiary deficit' where 'the rest of the record does not support the parameters included in the ALJ's residual functional capacity determination,' and the ALJ fails to 'build an accurate and logical bridge from the evidence to her conclusion.'" Krieger v. Colvin, 2016 WL 406330, at *3 (C.D. Ill. Feb. 2, 2016) (internal citations omitted). While it is true that the ALJ ultimately rejected all of the medical opinion evidence related to Plaintiff's mental limitations, he permissibly relied on other evidence in the record for support and built an accurate and logical bridge from that evidence to his conclusion. In doing so, the undersigned does not find that the ALJ was "impermissibly playing doctor" as the Plaintiff contends. Rather, the ALJ appropriately exercised his role as the sole arbiter of Plaintiff's RFC.

In conclusion, the ALJ found that the opinions of Mr. McCullough and Dr. Goudy were not persuasive as they were not fully consistent with the totality of the objective record. R. 67-68. In reaching the RFC determination in his decision, the ALJ "considered the medical opinions in accordance with the requirements of 20 C.F.R. § 404.1520c," R. 64, including the supportability and consistency considerations when he evaluated the opinions offered by Mr. McCullough and Dr. Goudy. R. 67-69. The ALJ's evaluation of the medical opinion evidence was performed without error, and his decision was supported by substantial evidence.

### C.   The Appeals Council did not err in its assessment of additional evidence.

There is a limited set of five circumstances under which the Appeals Council will review an underlying ALJ decision, 20 C.F.R. § 404.970(a), with the fifth being raised in this case: the submission of additional evidence to the Appeals Council. The Appeals

Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).[6] If the Appeals Council does not find that these requirements are met, it is neither required to "articulate its own assessment of the additional evidence" nor "announce detailed reasons for finding that the [additional] evidence did not warrant a change in the ALJ's decision." Hollar v. Comm'r of Soc. Sec., 194 F.3d 1304 (Table), 1999 WL 753999, at *1 (4th Cir. 1999).

In this case, additional evidence from Dr. Goudy and Mr. McCullough was provided, clarifying their previous medical opinions and noting discrepancies in the ALJ's findings. R. 28-30, 89-91. As Plaintiff described it, the supplemental responses from Dr. Goudy and Mr. McCullough "specifically attacked the ALJ's findings." ECF No. 19-1 at 20; ECF No. 28 at 19. The Appeals Council noted the submission of this additional evidence and did not exhibit it, stating "we find this evidence does not show a reasonable probability that it would change the outcome of the decision." R. 2. In other words, the Appeals Council properly declined review under 20 C.F.R. § 404.970(a)(5) after making the determination that there was not a reasonable probability that the responses from Dr. Goudy and Mr. McCullough would change the outcome of the ALJ's decision. See Tabb v. Comm'r of Soc. Sec., 2022 WL 910609, at *1 (4th Cir. Mar. 29, 2022) (holding that the Appeals Council "properly declined consideration of [the

---

[6] The undersigned notes that the original version of 20 C.F.R. § 404.970 only required that the evidence be new, material, and relate back to the relevant time period, and that "material" was defined as "[a] reasonable *possibility* that the new evidence would change the outcome of the case." Jeter v. Saul, 2020 WL 421472, at *8 (D.S.C. Jan. 9, 2020) (internal citations omitted). The regulation was amended (effective January 16, 2017) to re-define "material" as "relevant" and to add the "reasonable probability" requirement. Id.

plaintiff's] new medical evidence on the ground that it did not show a reasonable probability that it would change the outcome of the ALJ's decision"). Contrary to Plaintiff's contentions, no further explanation, rationale, or consideration was required from the Appeals Council on this additional evidence issue.

Plaintiff further argues that this determination by the Appeals Council was in error because both reports are new and "provide enlightenment to questionable and weak rationale provided by the ALJ in assessing persuasiveness." ECF No. 19-1 at 20. Yet, Plaintiff admits that the evidence at issue is a post-decision "attack" on the ALJ's findings and essentially a restatement of the medical opinions previously offered. ECF No. 19-1 at 19-20; ECF No. 28 at 19. As the Appeals Council found, there is not a reasonable probability that this type of additional evidence is likely to change the outcome of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). The undersigned finds no error, and remand to consider this evidence is not warranted.

## VI.   RECOMMENDATION

For the reasons herein stated, the undersigned finds that the Commissioner's decision denying Plaintiff's claim for disability insurance benefits contains no legal error and is supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 19] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 22] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written**

**objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States Chief District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** June 21, 2022

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

19